UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| CLAUDE DONALD ISAAC, | ) | |
| | ) | |
| Petitioner, | ) | No. 7:19-CV-62-KKC-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| J. DAVID GREEN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

*** *** *** ***

On August 21, 2019 (under the mailbox rule), state prisoner Claude Donald Isaac filed a timely *pro se* petition for a writ of habeas corpus.  D.E. 1.  The Warden responded and attached portions of the record.  D.E. 11.  Isaac filed a reply on January 6, 2020.  D.E. 15.  The state courts considered Isaac's claims and rejected them.  Applying the proper deference to the state courts' decisions, the undersigned recommends that the petition be **DENIED** because the claims are meritless.

## I.  Background

The Kentucky Supreme Court described the background of this case as follows:

> During the evening of November 12, 2013, a group of men gathered to play poker at a residence located in Tinker Fork Hollow.  Among those participating were Claude Isaac, Anthony Gillespie, and Thomas McNeil.  McNeil later recounted to police that Isaac and Gillespie arrived together on a green Honda Forman four-wheeler.  According to McNeil's statement to the police, Isaac was wearing brown coveralls and a black scarf around his neck and Gillespie was wearing a light blue coat, brown pants, and light brown suspenders.  Isaac and Gillespie were still together at the home when McNeil left for the evening.

> The following morning, McNeil was outside his home when he witnessed Isaac and Gillespie drive by on the four-wheeler.  The pair appeared to be wearing the same clothes that they had on the previous evening.  The only change to their attire was that both men were now using face masks and scarves.  When McNeil

last saw the pair, Isaac was driving down the road headed toward Header Branch Creek. Later that morning, Isaac and Gillespie were observed by Deno France driving towards the town of Virgie. France later recalled that the four-wheeler was green and that one of its riders was wearing brown coveralls and the other had a black scarf wrapped around his face.

At approximately 9:38 a.m. that morning, Isaac and Gillespie arrived at the Virgie branch of the U.S. Bank. Gillespie entered the bank armed with a handgun, while Isaac remained on the four-wheeler. When Gillespie entered the bank, the following individuals were present: Danita Reynolds, branch manager; Robyn Robinson, the bank teller at window number one; Jennifer Osbourne, the bank teller at window number two; and Sylvia Stone Bartley, a customer. Upon entering, Gillespie pointed his handgun at Bartley and demanded money from Robinson. Robinson complied giving Gillespie the money he demanded. The amount of money stolen in the bank robbery was between eight and nine thousand dollars. That amount did not include two hundred dollars that Gillespie also seized from the counter, money which belonged to Bartley. After obtaining the money, Gillespie exited the bank and drove away with Isaac on the four-wheeler.

When interviewed by police, Robinson and Reynolds were unable to identify the driver of the four-wheeler, other than to say that he had a slender build. Robinson was able to give a description of the gunman to the police, describing him as wearing tan coveralls, a black jacket, a toboggan, and a bandana around his face.

Approximately an hour and a half after the bank robbery, McNeil learned of the robbery through the use of a police scanner. McNeil decided to contact the police and met with Detective Tackett of the Kentucky State Police. During their meeting, McNeil viewed the surveillance video from the U.S. Bank. After watching the video, McNeil informed Detective Tackett that the two men in the surveillance video were wearing the same clothing as had Isaac and Gillespie when he last saw them.

The day of the robbery, Isaac visited Hall's Community Market located near Wheelwright, Kentucky. Isaac walked into the store wearing a light brown, tan, or beige-colored coveralls, a hoodie, and a ball cap. Carrie Hall, one of the owners of the store, thought Isaac was oddly dressed, because he was almost entirely covered to such an extent that she could barely see his eyes. Carrie Hall subsequently viewed the video of the bank robbery and recognized Isaac as the driver of the four-wheeler in the robbery. Carrie's husband, Greg Hall, also observed Isaac enter his store through the use of the store's surveillance system. Later, after learning that police had arrested a suspect (Isaac) in the robbery case in the store's parking lot, Greg Hall reviewed his store's surveillance video. Upon doing so, Hall recognized the suspect as being the same individual who had been in his store on November 13, 2013.

Isaac was charged with first-degree robbery, theft by unlawful taking (value $500.00 or more), and also charged as being a Persistent Felony Offender (PFO) in the second degree. After the jury returned a guilty verdict for the charges of first-degree robbery and theft by unlawful taking, Isaac entered into a plea agreement with the Commonwealth. In exchange for pleading guilty to being a persistent felony offender in the second degree the Commonwealth recommended a penalty of twenty years. The trial court sentenced Isaac in conformance with the agreement.

*Isaac v. Commonwealth* ("*Isaac I*"), No. 2014-SC-587-MR, 2016 WL 1068614 at *1-2 (Ky. Mar. 17, 2016).

Isaac appealed his convictions for first-degree robbery and theft by unlawful taking to the Kentucky Supreme Court. Among the issues he raised in that appeal are issues that appear in his federal habeas petition (*see* D.E. 1-1):

(1)     "[T]he trial court abused its discretion in denying his motion to sever his case from that of co-defendant Gillespie." *Isaac I,* 2016 WL 1068614 at *2.

(2)     "[T]he trial court erred in denying his motion for a continuance." *Id*. at 5.

(3)     "[E]rror based on the trial court's refusal to grant a mistrial or in the alternative a new trial due to a juror's alleged failure to disclose pertinent information on his juror qualification form." *Id*. at 6.

(4)     "[T]he trial court erred by permitting Bartley to make a courtroom identification of his co-defendant Gillespie." *Id*. at 7.

(5)     "[T]he trial court erred in refusing to instruct the jury as to lost or missing evidence." *Id*. at 8.

(6)     "[T]he trial court erred in denying his motions for a directed verdict, as there was insufficient evidence for the jury to conclude that he was guilty beyond a reasonable doubt." *Id*. at 9.

Isaac also filed a *pro se* postconviction motion under Kentucky Rule of Criminal Procedure

3

11.42.  *See Isaac v. Commonwealth* ("*Isaac II*"), No. 2018-CA-360-MR, 2019 WL 856517 (Ky. Ct. App. Feb. 22, 2019).  This motion was denied by the trial court and was affirmed in part, reversed in part, and remanded by the Court of Appeals.  Among the issues raised are several that also appear in Isaac's federal habeas petition:

(7)  "[D]efense counsel was ineffective because he inadequately investigated Thomas McNeil, witness for the Commonwealth."  *Isaac II*, 2019 WL 856517 at *2.

(8)  "[C]ounsel misled the trial court during the evidentiary hearing conducted on March 9, 2017."  *Id*. at 4.

(9)  "[C]ounsel's performance fell below an objective standard of reasonableness when he declined to have the juror in question testify at the hearing on his motion for a mistrial."  *Id*.

(10)  "[C]ounsel provided ineffective assistance because he did not object to the testimony of Carrie and Greg Hall during the trial."  *Id*. at 5.

(11)  "[T]rial counsel failed to raise the issue of double jeopardy and, therefore, he was wrongfully convicted of both first-degree robbery and theft by unlawful taking."  *Id*.

(12)  "[T]rial counsel failed to move for a continuance prior to trial."  *Id*. at 6.

(13)  "[C]ounsel failed to subpoena Detective Tommy Tackett to testify," resulting in the denial of a fair trial.  *Id*. at 7.

(14)  "[C]ounsel's failure to object to the Commonwealth's references to the Halls' testimony regarding their fear Isaac may rob them "amounted to ineffective assistance of counsel."  *Id*.

4

(15)    "[T]he Commonwealth referenced the fact that he did not testify in its closing argument and that trial counsel's failure to object amounted to ineffective assistance of counsel pursuant to RCr 11.42" *Id.*

The Court will separately consider each of these fifteen grounds for relief and will reference them as numbered in this list.

## II. Legal Standards

### A. Standard of Review for State Habeas Cases

A state prisoner has a statutory right to collaterally attack his conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001). A state prisoner may seek federal habeas corpus relief based on being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

AEDPA establishes a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). All the state court's factual findings are presumed

to be correct; they can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cri. 2003), *cert. denied*, 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas corpus court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (internal quotation marks omitted). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal quotation marks omitted). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Therefore, the question before this Court is not merely whether the Kentucky courts were incorrect, but whether they were so wrong that their treatment of the law and facts was "unreasonable" under these deferential standards.

### B. Standard of Review for Ineffective Assistance Claims

Isaac's ineffective-assistance-of-counsel ("IAC") claims face a very deferential standard of review. An IAC claims presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that

6

counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697.

When AEDPA deference under § 2254(d) and *Strickland's* standards of review interact, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Id*. Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id*. at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id*.

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Isaac when it analyzed and denied his IAC claims. Therefore, the Court must grant full double-deference to the state court's decision under § 2254(d).

## C. Full and Fair Presentation

As to grounds two, three, five, and six in Isaac's petition, the Warden raises the issue of full and fair presentation. D.E. 11 at 22, 27, 36, and 42. A § 2254 petitioner must establish that he has fully and fairly presented his constitutional claims, as such, to the state courts to include the state court of appeals and the state supreme court. *Bray v. Andrews*, 640 F.3d 731, 734-35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). This requirement arises under the exhaustion doctrine, which provides that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state habeas petitioner is required to put before the courts the factual and legal basis for the constitutional claim on review. *Wagner*, 581 F.3d at 414-15. "Merely raising an issue as a matter of state law will not satisfy the exhaustion requirement." *Stanford v. Parker*, 266 F.3d 442, 451-52. Even if the state courts do not consider the claim on the merits, so long as the claim was

fully and fairly presented to the state's highest court, it will be totally exhausted. *See Harris v. Reese*, 794 F.2d 1168, 1173-74 (6th Cir. 1986).

The Sixth Circuit has set forth four factors significant to the determination of whether a claim has been fully and fairly presented, including:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), citing *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.*, citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Thus, the Court must review Isaac's claims which the Warden contends have not been "fully and fairly presented" for exhaustion before reaching the merits of those claims.

As to ground two, Isaac claims that the Kentucky Supreme Court erred when it held that he was not prejudiced by the trial court's denial of his motion for continuance based upon what he claims was outstanding and exculpatory evidence. D.E. 1-1 at 28. On direct appeal from the trial court, the only United States Supreme Court case he relied on was *Morris v. Slappy*, 461 U.S. 1, (1983), and he relied upon it for the standard of review of the granting or denial of a motion for continuance. D.E. 11-3 at 37-39. Isaac also relied on *Snodgrass v. Commonwealth*, 814 S.W.2d 579 (Ky. 1991), which provided a list of factors for a trial court to consider when ruling on a motion for continuance and in which the Kentucky Supreme Court cited to *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985). The Kentucky Supreme Court reviewed Isaac's claim, but declined to review the factors set forth in *Snodgrass* in holding that the motion for continuance was both

"procedurally deficient and facially meritless." D.E. 11-3 at 103. Despite the Kentucky Supreme Court declining to rule on the merits as to this claim, the Court finds that it was fully and fairly presented to them as Isaac relied on both *Morris*, a federal case employing constitutional analysis, and *Snodgrass*, a state case which relied on a federal case's analysis of a similar issue. Thus, the undersigned will review ground two on the merits.

Next, the Court considers whether ground three was fully and fairly presented. Isaac argues in ground three that the Kentucky Supreme Court erred when it found no error in the denial of his motion for mistrial after the trial court learned that a juror provided an alleged false response on his juror qualification form. D.E. 1-1 at 33-37. Isaac argued on direct appeal that the denial of his motion for mistrial violated his constitutional right to a fair and impartial jury. D.E. 11-3 at 42. Despite the fact that Isaac did not cite federal law in his argument to the Kentucky Supreme Court, he did phrase the claim in terms of constitutional law and specifically alleged that the juror who provided a false response on his juror qualification form denied him the right to a fair and impartial jury. This is sufficient to satisfy the requirement that a claim be fully and fairly presented, and the Court will review the claim on the merits.

As to Isaac's fifth ground of claimed error, the Warden argues that Isaac did not fully and fairly present his due process claim regarding a lost or missing evidence instruction because his appellate brief only relied on *Brady v. Maryland*, 373 U.S. 83 (1963). However, it is clear from the Kentucky Supreme Court's opinion that Isaac presented a constitutional claim, because it analyzed it as such, relying on state law which employed constitutional analysis. Accordingly, the Court finds that Isaac fully and fairly presented this claim to the Kentucky Supreme Court and will address ground five on the merits.

Finally, as to ground six, Isaac claims the Kentucky Supreme Court acted contrary to federal law when it held that the trial court did not err in denying his motion for directed verdict of acquittal on the basis that there was insufficient evidence for a jury to find him guilty. D.E. 1-1 at 44-46. Isaac's argument in his brief the Kentucky Supreme Court on this issue consisted of providing the Court with a standard of review based on Kentucky law and did not allege that the denial of the motion violated any constitutional right. However, the Kentucky Supreme Court recognized that Isaac's claim on the sufficiency of the evidence raised an issue as to the Fourteenth Amendment in that it prohibits a conviction without proof of guilt beyond a reasonable doubt. D.E. 11-3 at 112. Clearly Isaac's claim as to ground six was fully and fairly presented as a violation of his constitutional rights as the Kentucky Supreme Court recognized the constitutional implications of his argument. Thus, the Court will address ground six on the merits.

### III. Analysis

### A. Ground One - Motion for Severance

Isaac claims that the Kentucky Supreme Court acted contrary to and unreasonably applied federal law when it held that the trial court did not abuse its discretion in denying his motion to sever his trial from his co-defendant. D.E. 1-1 at 24. The Kentucky Supreme Court reviewed this claim on direct appeal and found no error in the trial court's denial of Isaac's motion to sever. D.E. 11-4 at 97-102. The court reviewed the claim on three different grounds, concluding as to each that the trial court did not err in denying the motion. In his § 2254 petition, Isaac specifically argues that he was denied a fair trial when forced to be tried together with his co-defendant as the evidence of his co-defendant's wrongdoing could lead a jury to find Isaac guilty as well. D.E. 1-1 at 27. Isaac primarily relies on *Zafiro v. United States*, 506 U.S. 534 (1993), in his assertion that he was denied the right of a fair trial.

11

In *Zafiro*, the Supreme Court held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 549.  *Zafiro* specifically addressed the issue of whether a severance was required under Federal Rule of Criminal Procedure 14 when codefendants present "mutually antagonistic defenses" that are "not prejudicial *per se*."  *Id*. at 538.  Isaac summarily argues that he and Gillespie presented antagonistic defenses (D.E. 1-1 at 24), but he does not explain why this was the case beyond claiming to be innocent.  In truth, Isaac merely claims that the strength of the evidence against Gillespie prejudiced him in a general way.  His argument squarely focuses on perceived differences in the weight of the evidence against him versus Gillespie (*id*. at 26), but does not describe any defenses that were actually antagonistic within the *Zafiro* formulation.

Isaac fails to overcome the AEDPA standard as he has not provided the Court with federal authority dictating that a denial of a motion to sever in light of a disparity in the weight of the evidence between co-defendants violates a defendant's constitutional rights, and this Court has found none.  The Kentucky Supreme Court found that "even if there were such precedent, the evidence given by the Halls based on their observation of Isaac in their convenience store on the day of the robbery and upon viewing the surveillance tape of the U.S. Bank robbery was arguably as compelling, perhaps more so, then Bartley's evidence as to Gillespie." D.E. 11-3 at 100.  Isaac argues that, because no one witnessed him operating the four-wheeler, no witness identified him in the courtroom, he did not flee from police investigation, and McNeil testified that he did not believe Isaac was the four-wheeler operator, he was entitled to a separate trial because he was prejudiced by the fact that multiple witnesses positively identified Gillespie as one of the robbers.  However, Isaac's argument is unpersuasive as he has failed to demonstrate how his perceived lack

of evidence against him required severance, especially given the identification testimony of the Halls.  Because Isaac has failed to show that the Kentucky Supreme Court's treatment of the facts and law as to this issue clearly contravened or unreasonably applied Federal law, he cannot overcome the deferential standards applicable to his petition and ground one of his petition should be denied.

### B.  Ground Two - Motion for Continuance

Ground two of Isaac's petition claims that the Kentucky Supreme Court erred when it held that he was not prejudiced by the trial court's denial of his motion for continuance. D.E. 1-1 at 28. He argues that the continuance was necessary "to allow time for the obtaining of additional evidence which would have supported Petitioner's claim that newly found proofs tended to indicated [sic] Gillespie, acting with others, was responsible[.]"  *Id*. at 29.  The proof that Isaac based his oral motion for continuance on was a handgun found in the home of his co-defendant which police believed was used in a separate, unrelated, robbery.  Isaac's trial counsel argued that he needed the results of the handgun testing and a continuance, but trial counsel had already moved, successfully, to have the handgun excluded from trial.  The Kentucky Supreme Court declined to review the claim under the factors outlined in *Snodgrass* because the motion was procedurally deficient as trial counsel failed to include an "affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it." D.E. 11-3 at 103; *see* RCr 9.04.

Isaac asserts in his reply that the Kentucky Supreme Court "abused its discretion in addressing this issue in a manner offensive to *Morris v. Slappy*, *Avery v. Alabama*, and/or *Franklin v. South Carolina*. D.E. 15 at 7.  Isaac's claim fails on the merits.  The Supreme Court in *Morris v. Slappy*, 461 U.S. 1 (1983), addressed whether a trial judge abused his discretion and denied the

petitioner the right to counsel by denying a motion for continuance based on the substitution of appointed counsel six days before trial. The Court reversed the Ninth Circuit's holding that the trial court abused its discretion and found that the trial court "was abundantly justified in denying respondent's midtrial motion for a continuance," and "exhibited sensitive concern for the rights of the accused[.]" *Morris*, 461 U.S. at 13. This case is irrelevant to Isaac's claim that the Kentucky Supreme Court erred when it held that the trial court properly denied a defective and meritless motion for continuance based on outstanding and/or exculpatory evidence and does not mandate that Isaac's requested continuance should have been granted. Additionally, as to Isaac's reliance on *Zafiro*, he contends that his case "falls in line" with Justice Stevens's concurrence in *Zafiro*. However, concurring opinions by Supreme Court justices are not Federal law for the purposes of section 2254 and do not provide a basis for relief.

The Supreme Court of the United States in *Avery v. Alabama*, 308 U.S. 444 (1940), addressed whether a trial judge deprived a petitioner of his constitutional right to assistance of counsel by denying a motion for continuance. The Court held that no, the judge had not. *Avery*, 308 U.S. at 453. Again, this case is irrelevant to whether the Kentucky Supreme Court erred when it held that the trial court properly denied a defective and meritless motion for continuance based on outstanding and/or exculpatory evidence. In *Franklin v. S.C.*, 218 U.S. 161 (1910), the Court held that "the matter of continuance rests in the sound discretion of the trial court. … It would take an extreme case to make the action of the trial court in such a case a denial of due process of law." *Franklin*, 218 U.S. at 168. The specific issue in *Franklin* was the denial of a motion for continuance based on the need for additional time to examine notes of a witness's testimony. The Court held that there was no error in the denial based on the affidavit and evidence before the trial court at the time it declined to continue the case. *Id*. at 169.

14

Isaac's claim as to this alleged error by the Kentucky Supreme Court fails on the merits. He has not established that upholding the denial of the continuance was either contrary to, or an unreasonable application of, clearly established Federal law. Isaac has not provided the Court with authority from the Supreme Court of the United States that the denial of a motion for continuance based on the need for additional time to get results regarding a handgun that had been suppressed from the trial was in error. The handgun Isaac's counsel sought to examine was in police custody at the time, had already been excluded from Isaac's trial based on counsel's successful motion to suppress, and the gun had no exculpatory value to Isaac as it was not alleged to have been used by him nor was it believed to have been connected to his case in any way.

Isaac argues he needed the handgun to pursue an "alternative perpetrator defense by gathering evidence establishing that Gillispie [sic] was involved in various recent and ongoing robberies with individuals other than Petitioner[.]" D.E. 1-1 at 30. However, Isaac fails to establish that, even if the handgun had not been suppressed, that it would have been admissible to establish Gillespie's involvement in other crimes. He additionally argues that the denial was contrary to or an unreasonable application of *Ungar v. Sarafite*, 376 U.S. 575 (1964). *Ungar* addressed, among other issues, the denial of a continuance of a contempt hearing based on counsel needing additional time to prepare for the case. *Ungar*, 376 U.S. at 590. The trial court denied the request, and the Supreme Court of the United States affirmed the denial because, despite only having five days between the show-cause order and hearing date, there was plenty of time to hire counsel and prepare for the limited scope of the hearing. *Ungar* cites *Nilva v. United States*, 352 U.S. 385 (1957) and *Torres v. United States*, 270 F.2d 252 (9th Cir. 1959) for the proposition that "there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances in every case, particularly in

15

the reasons presented to the trial judge at the time the request is denied." *Id*. at 589. Isaac's reliance on *Ungar* is misguided as it does not require a continuance based on outstanding evidence from an unrelated case. Accordingly, Isaac's petition as to ground two should be denied.

### C. Ground Three - Motion for Mistrial for Juror Bias

Ground three of Isaac's petition claims that the Kentucky Supreme Court acted contrary to and unreasonably applied Federal law when it held that the trial court did not err in denying his motion for mistrial based on a juror providing a false response on his juror qualification form. D.E. 1-1 at 33. Isaac argues that the alleged false response prevented the juror from undergoing further questioning regarding his impartiality or potential biases. The Kentucky Supreme Court analyzed the claim under its test in *Taylor v. Commonwealth*, 175 S.W.3d 68, 74-75 (Ky. 2005), which is the same as the test used by the United States Supreme Court in *McDonough Power Equipment v. Greenwood*, 464 U.S. 548 (1984). The Court in *McDonough Power* held "that to obtain a new trial [based on a juror's mistaken response], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power,* 464 U.S. at 556. Additionally, the Court held that "motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id*.

The question Isaac accused the juror, Varney, of answering falsely was whether "one of his family members has ever been a defendant, witness or complainant in a criminal case[.]" D.E. 11-3 at 107. He argues that it was a material question and the Kentucky Supreme Court agreed that it was in that "it seeks to determine whether a prospective juror has a potential bias that warrants examination by the parties." *Id*. The Kentucky Supreme Court disagreed, however, that

16

the juror answered the question dishonestly and that a truthful answer would have resulted in the juror being struck for cause. *Id*. The court agreed with the trial court that the question "could have multiple meanings in this context" and the "mere fact that Varney's wife had been a witness to an unrelated robbery is insufficient to justify Varney's excusal." *Id*.

In cases where a juror's failure to respond to *voir dire* questioning is the result of an honest mistake, a showing of actual juror bias is required before a new trial must be granted. *Zerka v. Green*, 49 F.3d 1181, 1186 (1995). There was never any such evidence presented. The Kentucky Supreme Court analyzed the appropriate factors and reasonably concluded that the motion for mistrial was properly denied. Isaac has not met his burden and has not shown that the Kentucky court's ruling was an unreasonable application of, or contrary to, clearly established Federal law. Thus, ground three of his petition on that basis should be denied.

Isaac also argues that the Kentucky Supreme Court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2) under the standard of *McDonough Power Equipment v. Greenwood*, 464 U.S. 548 (1984). D.E. 1-1 at 34. The Kentucky court's decision was not an unreasonable determination of the facts in light of the evidence presented. The trial court held a hearing on the issue and Isaac did not call the juror to testify. As such, there was no direct evidence that the juror "deliberately concealed material information" so bias cannot be inferred. *United States v. Patrick*, 965 F.2d 1390, 1399 (6th Cir. 1992). Isaac argues, in reliance on *United States v. Torres*, 128 F.3d 38 (2nd Cir. 1997), that there was an implied bias given that the juror provided a "false or dishonest response to a key question[.]" D.E. 1-1 at 36. However, there was no direct evidence that the juror lied, or that his wife actually witnessed a bank robbery or testified during trial. The bank

17

robbery she may have witnessed was unrelated to Isaac's case and never went to trial. D.E. 11-4 at 192.

It cannot be said that the Kentucky Supreme Court's decision was based on an unreasonable determination of the facts presented to the trial court, as there was only mere speculation that the juror's wife was a witness to a bank robbery as well as speculation that the juror intentionally lied on the qualification sheet. The Kentucky Supreme Court's decision was not based on an unreasonable determination of the facts, therefore Isaac's claim as to ground three should be wholly denied.

### D. Ground Four - In-Court Identification

In ground four of Isaac's petition, he argues that the trial court erred when it permitted a witness to make an in-court identification of his co-defendant. D.E. 1-1 at 38. However, Isaac states that, because trial counsel erroneously relied on *Neil v. Biggers*, 409 U.S. 188 (1972), a case which addresses impermissibly suggestive pretrial identification procedures, "this issue and claim is reluctantly waived." *Id.* Accordingly, the Court declines to review ground four on the merits. Isaac does request that the Court take his trial counsel's misplaced reliance on *Biggers* into consideration when it addresses his ineffective assistance of counsel claims. D.E. 1-1 at 38. To the extent that Isaac clams ineffective assistance of counsel on that basis, the Court will consider all of Isaac's argument.

### E. Ground Five - Lost or Missing Evidence Jury Instruction

Isaac claims that the Kentucky Supreme Court acted contrary to, and unreasonably applied, Federal law in holding that the trial court did not err in refusing to give the jury a lost or missing evidence instruction. Here, Isaac argues that the police investigating the Virgie bank robbery "failed, either purposefully or through negligence, to act in good faith and according to normal

18

police procedures when they failed to personally and timely secure the video surveillance footage Greg Hall repeatedly referenced during his testimony." D.E. 1-1 at 40. Under *Arizona v. Youngblood*, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Isaac argues that ground five should be reviewed *de novo* because the state court did not address the federal constitutional component of his claim. On the contrary, the Kentucky Supreme Court explicitly cited a state law case which relied on *Youngblood*. However, Isaac argues that his claim is more properly addressed under the analysis in *California v. Trombetta*, 467 U.S. 479 (1984). The Supreme Court in *Trombetta* addressed the question of whether the Fourteenth Amendment "demands that the State preserve potentially exculpatory evidence on behalf of defendants." *Trombetta*, 467 U.S. at 481. The Court held that:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs*, 427 U.S., at 109-110, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id*. at 488-89. Isaac contends that the footage would have shown that he was wearing different clothing than that of the "Virgie Bank robbery get-away driver." *Id*.

Isaac has not shown a violation of *Trombetta* or *Youngblood*. "While police officers have a duty to preserve 'evidence that might be expected to play a significant role in the suspect's defense,' they do not have an unlimited duty to *collect* evidence." *United States v. Powell*, 2019 WL 3997269 at *3 (E.D. Ky. Aug. 23, 2019) (citing *California v. Trombetta*, 467 U.S. 479, 488 (1984), *see also Moldowan v. City of Warren*, 578 F.3d 351, 385 (6th Cir. 2009) (police do not

have an absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution.)). The defendant in *Powell* moved to dismiss the federal indictment against him based on the failure of the police to obtain video footage (which was later overwritten) in the possession of a hotel. The motion to dismiss was denied because "the government never had possession or the ability to control the . . . surveillance footage." *Powell*, 2019 WL 3997269 at *3. The same is true in Isaac's case. The police never possessed or had control over the surveillance footage, so the failure to preserve the footage is not a constitutional violation.

Even if the police have a duty to preserve evidence that is not in their possession, the Kentucky Supreme Court found that Isaac failed to demonstrate that the police acted in bad faith in failing to secure the surveillance footage from the Halls' market. D.E. 11-3 at 110-12. The Kentucky court found that the police obtained a copy of surveillance footage from the store, but due to a recording error, the footage of Isaac had been overwritten and the police's copy contained video of an irrelevant timeframe. *Id*. at 111. There was no evidence of bad faith on behalf of the police and thus, there was no denial of due process. *Id*. at 111-12. To the extent the Kentucky court relied on *Youngblood* in its determination that Isaac was not entitled to relief, Isaac has failed to demonstrate that its ruling was contrary to or an unreasonable application of Federal law. Thus, Isaac's claim as to ground five fails on the merits.

### F. Ground Six - Sufficiency of the Evidence

Ground six of Isaac's petition claims that the Kentucky Supreme Court acted contrary to and/or unreasonably applied Federal law when it held that the trial court did not err in denying Isaac's motion for directed verdict based on insufficient evidence. D.E. 1-1 at 44. When reviewing a habeas claim as to the sufficiency of the evidence, the Court must ask if "whether, after viewing

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Then, "[e]ven were we to conclude that a rational trier of fact could *not* have found [the defendant] guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not [objectively] unreasonable." *Id.*

The Kentucky Supreme Court provided the following analysis of Isaac's sufficiency of the evidence claim:

> Isaac alleges that the trial court erred in denying his motions for directed verdict, as there was insufficient evidence for the jury to conclude that he was guilty beyond a reasonable doubt. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits a conviction without proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S. Ct. 2781 (1979). "The question on appeal is whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009) (citing *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991)). In contrast, questions concerning "the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide." *Young v. Commonwealth*, 50 S.W.3d 148, 165 (Ky. 2001) (citing *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999)).

> Isaac argues that the testimony of Carrie Hall, Greg Hall, and Officer Tommy Fouts concerning Isaac's clothing lacked the necessary specificity for the jury to find Isaac guilty beyond a reasonable doubt. In particular, Isaac states that they were unable to identify the type, style, or brand of clothing worn. The testimony concerning Isaac's clothing, in conjunction with other evidence, was sufficient for a reasonable juror to find Isaac guilty beyond a reasonable doubt. The jury was able to hear testimony from multiple sources concerning the clothing worn by Isaac during the robbery or shortly thereafter, as well as his whereabouts during the relevant timeframe. Isaac's arguments concerning the lack of specificity in the descriptions of his clothing are more appropriate for the trier of fact than for an appellate court. The directed verdict motion was properly denied.

D.E. 11-3 at 112-13. The Kentucky Supreme Court included a footnote in its analysis which specified several other arguments Isaac made concerning his sufficiency claim, including:

> Officer Fouts was mistaken in his conclusion that Isaac was using the same four-wheeler to commit the robbery that he had seen Isaac driving prior to the robbery; Thomas McNeil's trial statement that he did not believe that the driver of the four-wheeler was Isaac; and Bartley's confusion regarding Gillespie and Isaac during the trial. None of these arguments warrants reversal for insufficiency of the evidence.

*Id.*

Isaac's argument relies mainly on the circumstantial nature of the evidence and the credibility of the witnesses. While there may have been conflicting testimony amongst witnesses, there was ample testimony and evidence of Isaac's participation to allow a reasonable juror to find him guilty. Both the Halls identified him as wearing the same clothing as that of the individual in the robbery video, and there was testimony that Isaac had access to and regularly used a green four-wheeler and was seen driving it on the morning of the robbery towards Virgie. *Isaac I*, 2016 WL 1068614, at *1-2. Isaac's entire argument relies on the credibility of the witnesses, which cannot be questioned by this Court. As such, it cannot be said that any rational trier of fact could not have found Isaac guilty given the evidence presented at trial and Isaac has not shown that the Kentucky court's decision regarding the motion for directed verdict was contrary to or an unreasonable application of Federal law. Ground six of Isaac's petition should be denied.

### G. Ground Seven - Counsel's Investigation of McNeil

Isaac claims that the Kentucky Court of Appeals acted contrary to federal law when it held that the trial court did not err in its determination that trial counsel was not ineffective for his alleged inadequate investigation of McNeil. Isaac argues that, had his trial counsel conducted an investigation into McNeil, he would have uncovered information regarding McNeil's alleged

mental and physical health and McNeil would have recanted his statement sooner than the morning
of trial.  D.E. 1-1 at 50-52.

In *Strickland*, the Supreme Court recognized that counsel has a duty to conduct a
reasonably thorough pre-trial investigation:

> [A lawyer's] strategic choices made after thorough investigation of law and facts
> relevant to plausible options are virtually unchallengeable; and strategic choices
> made after less than complete investigation are reasonable precisely to the extent
> that reasonable professional judgments support the limitations on investigation.  In
> other words, counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91.

At the RCr 11.42 evidentiary hearing before the trial court, Isaac's trial counsel testified
that he "hired a private investigator to investigate McNeil and that he had conducted his own check
of court records."  D.E. 11-4 at 189.  Additionally, counsel testified that "he specifically chose not
to cross-examine McNeil at trial" because McNeil "'was the defendant's best witness' because he
told the jury that the person on the four-wheeler in the bank's security video was not Isaac."  *Id*.
Isaac has not established deficient performance or prejudice, especially under the double-deference
due at this stage.  Making the determination not to cross-examine a witness for impeachment
purposes in this instance "might be considered sound trial strategy" under the circumstances.  *See
Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

Additionally, he must show that the outcome of his trial would have been different but for
counsel's ineffective assistance.  Relief will not be granted, even if counsel's performance was
deficient, unless Isaac was actually prejudiced.  *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir.
2005).  Bare allegations of prejudice are insufficient; Isaac must produce enough evidence to
demonstrate a reasonable probability that the outcome would have been different.  He alleges that,
had trial counsel contacted McNeil in the weeks prior to trial, there is a reasonable probability his

motion for severance would have been granted and pre-trial motion practice would have compelled the state to establish probable cause absent use of McNeil's identification. D.E. 1-1 at 52. But he does not identify any procedural or substantive law that would have entitled him to a severance, so there is no real basis presented in support of this argument for this Court to review. Finally, counsel reasonably interpreted McNeil's testimony as helpful to the defense so it undercuts any claim of prejudice.

Because Isaac has failed to satisfy either prong of *Strickland* and has failed to demonstrate that the Kentucky court's ruling was unreasonable, his claim as to ground seven should be denied.

## H.  Ground Eight - Counsel's Evidentiary Hearing Testimony

Ground eight of Isaac's petition claims that the Kentucky Court of Appeals acted contrary to Federal law when it held that trial counsel's testimony at the RCr 11.42 evidentiary hearing was not misleading. D.E. 1-1 55-58. He claims trial counsel's testimony led the court to believe that "McNeil recanted his identification prior to trial, rather than in his testimony on the morning of the trial." *Id*. at 55. The Kentucky Court of Appeals addressed this claim and held that the trial court did not abuse its discretion in denying Isaac's ineffective assistance claim on this basis. D.E. 11-4 at 190-91.

It's unclear how Isaac believes that his trial counsel's testimony, at a hearing where Isaac was no longer represented by his trial counsel, amounts to ineffective assistance of counsel. As the Kentucky Court of Appeals stated, "counsel's testimony at the evidentiary hearing as to when McNeil recanted his identification of Isaac is irrelevant to whether he provided effective assistance to Isaac during the trial." *Id*. at 191. The purpose of the right to counsel is to ensure that a defendant receives a fair trial. *Strickland*, 466 U.S. at 689. The evidentiary hearing was conducted based on Isaac's motion pursuant to RCr 11.42 and his trial counsel was no longer representing

him at that time.  Further, whether his trial counsel's testimony at the hearing was in violation of
the rules of professional conduct is not for this Court to consider.

Isaac cannot establish that his trial counsel's testimony at the RCr 11.42 hearing constituted
deficient performance and the Court need not consider the prejudice prong of *Strickland*.  *See*
*Strickland*, 466 U.S. at 697 (an insufficient showing on either prong ends the inquiry).
Additionally, Isaac has failed to establish that the Kentucky court's decision was unreasonable and
ground eight should be denied.

### I.  Ground Nine - Failure to Call Juror Varney to Testify

In ground nine of Isaac's petition he claims that the Kentucky Court of Appeals erred when
it affirmed the trial court's holding that his trial counsel was not ineffective for failing to call the
alleged biased juror (Varney) to testify at the motion for mistrial hearing.  D.E. 1-1 at 59-61.  Isaac
argues that the failure to call Varney to testify precluded appellate review of the juror bias issue.
*Id*.  On this issue, the Kentucky Court of Appeals stated:

> Trial counsel testified that he did not believe it would have been beneficial
> to Isaac to have the juror testify at the motion for mistrial.  He testified that there
> was a question of whether the juror's wife was actually present on the day her
> employer bank was robbed.  Counsel expressed concerns that the juror would have,
> in fact, undermined the argument he was trying to make.  Counsel had spoken to
> the juror after the trial and learned that he did not intentionally lie or answer
> untruthfully on the juror qualification form.  Furthermore, he was concerned that
> the juror would have testified that his wife's experience had no effect on him and
> did not bias him.  Counsel also testified that he could not say for certain that he
> would have stricken the juror had he known about his wife's experience.

D.E. 11-4 at 193.

Isaac appears to argue in his petition that the Kentucky Court of Appeals acted contrary to
*McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548 (1984) and *Patton v. Yount*, 467
U.S. 1025 (1984), pertaining to the standard of a motion for mistrial on juror bias.  The reliance
on these cases is misplaced as review for ineffective assistance of counsel hinges on a showing

under *Strickland* that counsel's performance was deficient and that it prejudiced the outcome of the case. Additionally, Isaac argues that if he had been "aware of the fact that juror Bobby Varney's wife had witnessed a bank robbery, he most certainly would have had questions as to the exact effect felt by Mrs. Varney's reaction to the bank robbery she witnessed." D.E. 1-1 at 60. This argument misses the mark. Merely having had questions regarding the impact the juror's wife's experience had on him does not establish that Isaac would have "a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. Further, the Kentucky Court of Appeals had no reason to apply *McDonough* or *Yount*, as those standards were irrelevant to whether trial counsel was ineffective.

To the extent Isaac is arguing that the Kentucky court unreasonably applied *Strickland*, that argument fails. Counsel testified at the RCr 11.42 hearing and explained his reasoning for not calling the juror, including that he believed the juror did not intentionally lie on the qualification form and that he had concerns that calling the juror would undermine his argument. Because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Isaac cannot show that his trial counsel's decision was deficient nor can he demonstrate that the result of the mistrial hearing would have been different had Varney been called to testify. *See Strickland*, 466 U.S. at 689 (internal quotation marks omitted). The Kentucky Court of Appeals reasonably applied *Strickland* and ground nine of Isaac's petition is insufficient to warrant habeas relief.

### J. Ground Ten - Failure to Object to the Halls' Testimony

Ground ten of Isaac's petition claims that the Kentucky Court of Appeals acted contrary to and unreasonably applied Federal law when it held that the failure to object to two witnesses' testimony concerning surveillance footage of their store was not ineffective assistance. D.E. 1-1

at 62-64. Isaac argues that his trial counsel was ineffective when he failed to move for a mistrial

or to strike all testimony concerning the surveillance footage from Hall's Market. *Id.* at 62. He

claims he was prejudiced by this alleged deficient performance because the video was exculpatory

in nature and would have discredited the Halls' testimony. *Id.* As to this issue, the Kentucky

Court of Appeals held:

> The record refutes Isaac's assertions. Briefly, the Halls sent a copy of what
> they believed to be surveillance video from the time that Isaac was in their market
> on the day of the bank robbery. However, when the Kentucky State Police
> reviewed the video several weeks later, they discovered that the Halls had provided
> video from the wrong time period. In the interim, the store's surveillance system
> had overwritten the recording from the day of the robbery. The issue of the missing
> surveillance video from the Hall's Community Market was addressed at length by
> Isaac's trial counsel on cross-examination of Carrie Hall, Greg Hall, and Detective
> Jason Merlo. Counsel also motioned the trial court for a missing evidence jury
> instruction which was denied. The record does not show that trial counsel had any
> reason to object to the testimony of either Carrie or Greg Hall and defendant's
> argument is without merit. Counsel addressed the issues now raised by Isaac during
> cross-examination at trial. The trial court did not abuse its discretion in denying
> relief to Isaac related to this claim in his RCr 11.42 motion.

D.E. 11-4 at 194-95.

To the extent that Isaac seeks to re-litigate his claim arguing that the Kentucky State Police

lost exculpatory evidence, that claim has already been addressed in ground 5 of this recommended

disposition. The Kentucky Court of Appeals did not address Isaac's arguments regarding Greg

Hall being an agent of the state. To this extent, Isaac argues that the Kentucky Court of Appeals

based its decision regarding trial counsel's failure to object on an unreasonable determination of

the facts under § 2254(d)(2). Isaac cites *Lugar v. Edmondson Oil*, 457 U.S. 922, 941 (1982), which

addressed when a private actor's actions constitute state action for a claim pursuant to 42 U.S.C.

§ 1983. His argument is merely conclusory and defies meaningful review.

To the extent that Isaac claims that his trial counsel's failure to object was ineffective

assistance of counsel, Isaac has failed to show that trial counsel had a sufficient basis to object.

Even if there was a basis to object, "[A]ny single failure to object does not constitute error unless the information 'is so prejudicial to a client that failure to object essentially defaults the case to the state.'" *Hodge v. Haeberlin*, 579 F.3d 627, 649 (6th Cir. 2009) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). The Halls were testifying as to their perception of Isaac when he was in their market. It cannot be said that this testimony was so prejudicial as to default the case to the state. Additionally, Isaac has failed to demonstrate why the testimony should have been objected to rather than simply addressed during cross-examination.

Importantly, the Kentucky Court of Appeals found that Isaac's trial counsel cross-examined the witnesses at length regarding the missing surveillance footage. However, Isaac argues that the testimony would have been stricken had it been objected to, but offers only conclusory allegations. Because Isaac fails to establish either prong under *Strickland* and fails to show how the Kentucky court's analysis of his claim was unreasonable or contrary to Federal law, ground ten of his petition is without merit.

### K. Ground Eleven - Double Jeopardy

Isaac claims in ground eleven of his petition that the Kentucky Court of Appeals acted contrary to or unreasonably applied Federal law when it denied relief as to his claim that trial counsel was ineffective for failing to object to Isaac's conviction for both robbery and theft by unlawful taking based on double jeopardy. D.E. 1-1 at 65-67. The Kentucky Court of Appeals reviewed this claim and agreed with Isaac, finding that he was impermissibly convicted of both crimes, as theft by unlawful taking is a lesser-included offense of robbery. D.E. 11-4 at 196-98. Isaac's case was remanded to the trial court "with instructions to enter a new judgment vacating Isaac's conviction for theft by unlawful taking." *Id*. at 198. The Kentucky court reasoned that vacating the entire judgment and sentence was unwarranted because the evidence submitted to the

jury would have been the same even if trial counsel raised the issue of double jeopardy and because there was sufficient evidence to convict Isaac of first-degree robbery.  *Id*.

In its decision, the Kentucky court expressly addressed the holding in *Ball v. United States*, 470 U.S. 856 (1985), which stated that merely running the sentences concurrently, as the state argued for, is not a sufficient cure and that a second conviction can be an impermissible punishment.  D.E. 11-4 at 195-98.  Isaac now argues that the Kentucky court's resolution of the claim was an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).  He claims the Kentucky court's remedy was not enough and that the only appropriate remedy for trial counsel's ineffective assistance would be to vacate the entire judgment to "cure[] a jury tainted by being compelled to entertain, consider and ultimately finding [sic] guilty of a criminal charge obtained in violation of the Double Jeopardy Clause[.]"  D.E. 15 at 19-20.

The Supreme Court in *Ball* addressed conduct punishable under two statutes.  The Court ordered that the district court vacate one of two convictions because of the "potential adverse collateral consequences[.]"  *Ball*, 470 U.S. at 865.  It held that a "second conviction, even if it results in no greater sentence, is an impermissible punishment."  *Id*.  The Kentucky court gave Isaac precisely the same remedy that was given in *Ball* and made findings that the evidence presented at trial was sufficient to establish guilt as to the robbery charge and would still have been presented to the jury even if the double jeopardy issue was raised.  D.E. 11-4 at 198.  The Court has already addressed the issue of the sufficiency of the evidence in its analysis of ground 6 above.  Isaac has failed to show that the Kentucky court's resolution of his double jeopardy claim was contrary to or an unreasonable application of Federal law.  He has also failed to demonstrate that the Kentucky court's determination of the facts was unreasonable.  Thus, ground eleven of Isaac's claim is without merit and should be denied.

29

## L.  Ground Twelve - Failure to Move for Continuance

In ground twelve of Isaac's petition, he claims that the Kentucky Court of Appeals acted contrary to or unreasonably applied Federal law in finding that trial counsel did not render ineffective assistance of counsel in failing to move for a continuance to address material evidence. D.E. 1-1 at 68-72.  It appears that what Isaac actually claims is that trial counsel was ineffective for failing to succeed on the motion to continue due to counsel's failure to comply with the Kentucky rules when making the motion.  *Id*.  In his brief to the Kentucky Court of Appeals, Isaac framed the issue as regarding counsel's failure to move for a continuance, rather than failing to successfully move for a continuance or failure to move for a continuance on a specific issue.  D.E. 11-4 at 141-42.  The Kentucky Court of Appeals briefly addressed the issue and found:

> Isaac argues that his trial counsel failed to move for a continuance prior to trial.  This assertion is refuted by the record.  Counsel filed a motion to sever on July 11, 2014.  He renewed the motion and asked for a continuance in chambers on the morning of the trial, at which time Gillespie's counsel stated that they were ready to proceed even if the court granted Isaac's motion to sever.  The trial court denied Isaac's motions.  Counsel testified that he did not include an affidavit with his motion to continue because he was waiting until the last minute to see if certain lab results would be completed prior to trial.  This testimony was unrefuted.  Accordingly, the trial court did not err when it denied relief to Isaac because the claim is meritless.

D.E. 11-4 at 198-99.  As previously discussed, Isaac's trial counsel was waiting on test results from a gun alleged to have been used in an unrelated bank robbery that he had already successfully moved to suppress.  D.E. 11-2 at 3-4; *see* D.E. 11-3 at 100-01.  Further, the Kentucky Supreme Court found that the motion to continue, while procedurally defective, was meritless.  D.E. 11-3 at 102-05.  Because Isaac's trial counsel did in fact move for a continuance in light of outstanding evidence, albeit unrelated to Isaac's case, any claim that counsel was ineffective for failing to move for a continuance is without merit.

30

Additionally, to the extent that Isaac argues that trial counsel was ineffective for failing to successfully move for a continuance or to argue what Isaac believes would have been a more compelling and successful argument, that claim is also meritless. Isaac, even assuming that his trial counsel's submission of a procedurally defective motion to continue was ineffective assistance, cannot establish prejudice. He has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Isaac must show that "different actions or a different strategy by counsel could have altered the verdict." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Isaac has failed to establish a reasonable probability that, had his counsel's motion for continuance been procedurally sound, the trial court would have granted the motion. Nor does he provide the Court with anything more than conclusory statements that, had his counsel pursued the motion based on other arguments, the motion would have been successful. Isaac was still able to mount a meaningful defense to the charges, even without additional evidence pertaining to Gillespie and other unlawful activity he may have been involved in. Because Isaac cannot show that the Kentucky Court of Appeals' decision as to this claim was unreasonable or contrary to Federal law, and he cannot establish deficient performance or prejudice under *Strickland*, Isaac's claim on ground twelve should be denied.

## M.  Ground Thirteen - Failure to Compel Testimony

Isaac claims in ground thirteen of his petition that the Kentucky Court of Appeals acted contrary to or unreasonably applied Federal law when it held that the trial court correctly denied his RCr 11.42 motion as to trial counsel's failure to compel the testimony of Kentucky State Police Detective Tony Tackett. D.E. 1-1 at 73-76. Isaac claims that his trial counsel provided ineffective assistance when he failed to compel the testimony of Detective Tony Tackett because he would

31

have been able to testify as to Thomas McNeil's "manipulability" and "prior incidents of McNeil providing mistaken information in the past." *Id*. at 73. Isaac argues that Tackett's testimony was vital to his defense, not to pursue legal conclusions as to McNeil's mental state, but to "place information before the jury concerning Tackett's professional law enforcement and intelligence gathering interactions with Thomas McNeil[.]" *Id*. at 75.

The Kentucky Court of Appeals found that:

> When McNeil realized that he possibly had information regarding the suspects in the bank robbery, he reached out to Detective Tommy Tackett of the Kentucky State Police. Although Tackett was present at McNeil's interview, only Detective Merlo conducted the interview and asked questions. Merlo was the lead detective in the case and there is no evidence that Tackett was involved beyond being the initial point of contact and attending the interview. Isaac asserts that Tackett would have testified to his 'recognition and manipulation of McNeil's mental condition and/or infirmities.' Isaac merely speculates what Tackett's testimony would have been. There is no evidence in the record that Tackett could have been considered a medical or mental health expert and any testimony by him to that effect would have been inadmissible. Counsel's unrefuted testimony is that he believed McNeil was the defense's 'best witness.' Therefore, there would have been no benefit in using Tackett's testimony to call into question McNeil's credibility, physical condition, and/or mental stability during the trial.

D.E. 11-4 at 199-200.

"The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010), citing *Towns v. Smith*, 395 F.3d 251, 258-60 (6th Cir. 2005) (counsel ineffective for failing to call a witness who could have created an alternative theory of the case). However, "defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citation omitted). Isaac's argument relies on Detective Tackett for impeachment testimony as to McNeil, rather than to exculpate Isaac. As the Kentucky court discussed, there was no reason for Isaac's trial counsel to impeach McNeil because McNeil testified that he did not believe it was Isaac

32

driving the four-wheeler. D.E. 11-4 at 188; 199-200. Trial counsel reasonably believed that McNeil was the defense's best witness and determined that impeaching him would not further the defense. *See* D.E. 11-4 at 189 ("Counsel testified [at the RCr 11.42 hearing] that McNeil 'was the defendant's best witness' because he told the jury that the person on the four-wheeler in the bank's security video was not Isaac.").

The decision not to call Detective Tackett to testify can reasonably be "considered sound trial strategy." *Strickland*, 466 U.S. at 689. As such, Isaac cannot establish that his trial counsel's decision not to call Detective Tackett as a witness was deficient performance. Even if it were deficient performance, Isaac cannot establish prejudice. Detective Tackett's testimony would have served to question the credibility of McNeil's testimony and credibility determinations are made by the jury. A habeas court "may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Thus, assuming trial counsel's failure to call Detective Tackett was deficient performance, Isaac cannot establish prejudice under *Strickland*.

Isaac also argues that the Kentucky court's decision as to this issue was an unreasonable application of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which addressed "the standard for admitting expert scientific testimony in a federal trial." *Daubert*, 509 U.S. at 582; *See* D.E. 1-1 at 75. It is unclear why Isaac believes the Kentucky court unreasonably applied *Daubert*. Further, any reliance on *Brady v. Maryland*, 373 U.S. 83 (1963), regarding compelling the testimony of Detective Tackett because it would have been exculpatory is misplaced. Detective Tackett's testimony regarding his interactions with McNeil and any possible mental or physical health issues McNeil may have suffered from would have been for impeachment purposes, not to exculpate Isaac. In any event, Isaac's argument that the Kentucky

33

court unreasonably applied case law including *Daubert*, *Brady*, *United States v. Sheffey*, 57 F.3d 1419 (6th Cir. 1995), and *Woods v. Lecureaux*, 110 F.3d 1215 (6th Cir. 1997), need not be considered given that the question for review of an ineffective assistance of counsel claim is whether the state court unreasonably applied *Strickland* and its progeny.

Accordingly, Isaac fails to establish that the Kentucky Court of Appeals' resolution of this claim was unreasonable so ground thirteen of his petition should be denied.

### N.  Ground Fourteen - Failure to Object Regarding KRE 404(B) Matters

Isaac claims in ground fourteen of his petition that the Kentucky Court of Appeals acted contrary to and unreasonably applied Federal law when it found that his trial counsel was not ineffective for failing to object to references "to KRE 404(B) matters, which are reflective of FRE 404(B)." D.E. 1-1 at 77.  Specifically, Isaac argues that his trial counsel should have objected to: (1) the Commonwealth's opening statement to the jury when the prosecutor referenced the Halls' belief that they were going to be robbed; and (2) the specific testimony by the Halls regarding his "dress, demeanor and facial visibility."  *Id*.

Federal Rule of Evidence 404(b) provides that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  As noted by Isaac, Rule 404(b) is the same as Kentucky Rule of Evidence 404(b).  D.E. 1-1 at 78.  The Kentucky Court of Appeals affirmed the trial court's denial of Isaac's RCr 11.42 claim on this issue because:

> At no time did the Commonwealth reference other crimes, wrongs, or acts of Isaac in opening or closing arguments.  Nor did the Commonwealth elicit such evidence from the testimony of any witness.  The testimony of the Halls merely referenced their observations and trepidation in light of how Isaac was dressed when he walked into the store and their knowledge of other unrelated crimes that had taken place at businesses in the area.  There was simply no violation of KRE 404(b) to which trial counsel should have objected.

D.E. 11-4 at 200-01.

Neither of Isaac's claimed objectionable statements referenced 404(b) matters. Rule 404(b) addresses the introduction of other crimes, wrongs, or acts of the *defendant* to prove that on the specific date in question the defendant acted in conformity with their prior conduct. Testimony by a witness of their subjective fear of being robbed based on the appearance of the defendant and that other crimes had been occurring in the area would not be appropriately objected to under Rule 404(b). Thus, any reference by the prosecutor to the testimony in opening statement or closing argument would likewise not be objectionable. Isaac's trial counsel had no legitimate basis to object to either the prosecutor's reference or to the Halls' testimony so his failure to object on those bases was not deficient performance. As to any other "repeated and deliberate statements . . . designed to inflame the jury and prejudice . . . the accused," Isaac fails to specifically identify what statements he is referring to and the Court cannot assess whether they were objectionable under Rule 404(b). Thus, Isaac's arguments under *United States v. Young*, 470 U.S. 1 (1985), and *Sizemore v. Fletcher*, 921 F.2d 667 (6th Cir. 1990), need not be addressed. *See* D.E. 1-1 at 79.

Even if Isaac's trial counsel's failure to object was deficient performance, Isaac has not shown that he was prejudiced by the inaction. *See Lundgren*, 440 F.3d at 774 (holding that "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state."). Nothing that the Halls testified to or that the prosecutor referenced tainted the fairness of the trial and thus, there was no due process violation. D.E. 1-1 at 80 (Isaac citing *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (held that "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.").

Isaac also argues that the Kentucky Court of Appeals unreasonably applied *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and its progeny. D.E. 1-1 at 78-79. *Donnelly* addressed a prosecutor's statements during closing argument which addressed the defense requesting a verdict of "something a little less than first-degree murder." *Donnelly*, 416 U.S. at 640. In that case, defense counsel objected and an instruction was given to disregard the statement. *Id*. at 641. The Supreme Court held that the prosecutor's remark "was but one moment in an extended trial and was followed by specific disapproving instructions[,]" and that the incident did not make "respondent's trial so fundamentally unfair as to deny him due process." *Id*. at 645. Isaac's reliance on *Donnelly* is misplaced as it does not address ineffective assistance of counsel and the prosecutor's remarks he complains of (D.E. 15 at 23) are not those which are a denial of due process. Additionally, *Donnelly* did not address remarks by the prosecutor concerning Rule 404(b) matters.

Isaac has failed to establish either that his trial counsel's failure to object to the prosecutor's opening and to the Halls' testimony was deficient performance or that the Kentucky court's decision was unreasonable or contrary to Federal law. Thus, his claim as to ground fourteen is without merit and should be denied.

### O.  Ground Fifteen - Failure to Object to Prosecutor's Closing Argument

Finally, in ground fifteen of his petition, Isaac claims that the Kentucky Court of Appeals acted contrary to and unreasonably applied Federal law when it upheld the trial court's denial of relief based on what he characterizes as "derogatory reference to petitioner's silence at trial and burden shifting" by the prosecutor during closing argument. D.E. 1-1 at 81-83. Isaac appears to claim that the prosecutor acted improperly when referencing testimony regarding an ATV identification and speaking to the jury about Isaac's election to not testify. He also appears to

36

argue that the burden was improperly shifted upon him through the prosecutor's references to Gillespie's conduct. *Id.* Isaac further argues that the Kentucky court based its decision on an unreasonable determination of the facts under § 2254(d)(2). *Id.*

The Kentucky Court of Appeals held that this claim is "completely refuted by the record." D.E. 11-4 at 201. Specifically, the state court found:

> At no time in its closing argument did the Commonwealth make mention of the fact that Isaac did not testify. Moreover, Jury Instruction No. 4 states '[a] defendant is not compelled to testify, and the fact that the Defendant did not testify in this case cannot be used as an inference of guilty and should not prejudice him in any way.' Isaac's argument is meritless.

> It is unclear precisely what Isaac is referring to in the record when he states that counsel failed to object to 'burden-shifting.' However, after careful review, we note that Gillespie's trial counsel objected during the Commonwealth's closing argument. The Commonwealth had stated that Gillespie could have subpoenaed one or more individuals with whom Gillespie claimed he was working on the day of the robbery, but did not. In her objection, Gillespie's counsel argued that the defense was not required to put on any evidence or call any witnesses. The trial court overruled the objection, holding that the Commonwealth only stated that the defense had the opportunity to present alibi witnesses. After Gillespie's objection was overruled, the Commonwealth continued its closing argument and made reference to the fact that Isaac could have called his girlfriend at the time as a witness, but did not.

> … The record is clear that the Commonwealth was commenting on the defense tactic to not call additional witnesses to support an alibi. At no time did the Commonwealth state or imply that Isaac should have called additional witnesses or that he had an obligation to call witnesses. At no time did the Commonwealth shift the burden of proof to either defendant. Isaac's trial counsel had no reason to object to the Commonwealth's closing argument, particularly because the trial court had overruled Gillespie's objection to same.

*Id.* at 201-02.

Isaac has failed to show that the appellate court's resolution of this claim was unreasonable. He provides the Court with nothing more than conclusory statements that the decision was unreasonable and contrary to Federal law. Isaac is correct that the Supreme Court of the United States held in *Griffin v. California*, 380 U.S. 609 (1965), that the Fifth Amendment, as applied to

the states through the Fourteenth Amendment, prohibits the prosecution from commenting on an accused's silence. *Griffin*, 380 U.S. at 615. However, Isaac cannot show that his trial counsel was deficient for failing to object to the prosecutor's closing because there was no basis for counsel to object. The Kentucky Court of Appeals carefully reviewed the record and found no instance in which the prosecutor made a comment on Isaac's silence at trial. D.E. 11-4 at 201. The Kentucky court also found that the comment made about Isaac calling an additional witness in his defense was permissible under the holding in *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987), allowing comment on tactics, evidence, and the falsity of a defense position. *Slaughter*, 744 S.W.2d at 412; *see* D.E. 11-4 at 202. As such, Isaac's counsel had no basis to object and cannot be said to have rendered deficient performance.

Isaac also relies on *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978), in which the Sixth Circuit held that a prosecutor's statements, which created "an inference of guilt based solely on petitioner's election to remain silent, were "highly improper and constituted a flagrant violation of *Griffin*." *Bordenkircher*, 590 F.2d at 202. The comments that were made in *Bordenkircher* are distinguishable from the comments at issue in this case. Again, the Kentucky court carefully reviewed the record and found no comment on Isaac's silence at trial. Merely commenting on the fact that Isaac could have presented witnesses to further dispute his participation in the Virgie Bank robbery did not create an inference of guilt solely on *his* decision not to testify.

As to Isaac's argument that the prosecutor's comments violated *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *In re Winship*, 397 U.S. 358 (1970), they are inapplicable. The prosecutor in Isaac's case was not shifting the burden of proof as *Mullaney* addresses.

The decision of Isaac's trial counsel not to object to the prosecutor's closing argument does not satisfy the standard of *Strickland* and Isaac has failed to show that the Kentucky court's

decision was unreasonable or contrary to Federal law. Thus, his claim for habeas relief on ground fifteen is without merit and should be denied.

### IV.  Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that Isaac's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.E. 1) be **DENIED**.

No evidentiary hearing is warranted.  *See* D.E. 15 at 26 (Isaac's request for a federal evidentiary hearing).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court further **RECOMMENDS** that no certificate of appealability ("COA") issue.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  Under this standard, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.

In this case, the opinions of the Kentucky courts are entitled to capacious deference under AEDPA.  Reasonable jurists would not find that these courts rendered "a decision that was contrary

39

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Isaac's claims are insufficiently viable to deserve encouragement to proceed further.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this recommended disposition, issued under subsection (B) of the statute. *See also* Rule 8(b) of the Rules Governing Section 2254 Proceedings. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 25th day of March, 2020.

**Signed By:**

**_Hanly A. Ingram_**

**United States Magistrate Judge**